UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVAN DARK,

                                    Petitioner,

-vs-

K. CROWLEY,

                                    Respondent.
_____

DECISION AND ORDER

6:16-CV-6432 CJS

## INTRODUCTION

Petitioner Davan Dark ("Dark" or "Petitioner") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner, who was convicted of illegally selling and possessing narcotics under New York State law, contends that his federal constitutional rights were violated in several ways.  For the reasons explained below, the petition for a writ of habeas corpus is dismissed.

## BACKGROUND

The following is a summary of the relevant facts.  On April 11, 2011, after a bench trial in Erie County Court, Dark was convicted of Criminal Sale of a Controlled Substance in the Third Degree, New York Penal Law ("PL") § 220.39[1][1] and Criminal Possession of a Controlled Substance in the Third Degree, PL § 220.16[1][2] and sentenced to 10 years of imprisonment and 3 years of post-release supervision.  Evidence adduced by the

_____

[1] "A person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells: 1. a narcotic drug;" N.Y. Penal Law § 220.39 (McKinney)
[2] "A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses: 1. a narcotic drug with intent to sell it;" N.Y. Penal Law § 220.16 (McKinney)

Government at trial indicated that Plaintiff had sold crack cocaine to undercover police officers.  Dark did not testify at trial.

Plaintiff appealed his conviction to the New York State Supreme Court, Appellate Division, Fourth Department ("Fourth Department"), arguing that that there was legally insufficient evidence to sustain his conviction concerning identification;  that his conviction was against the weight of the evidence concerning identification; that his attorney was ineffective for failing to request a *Wade* haring prior to trial; that there was a *Brady* violation due to the fact that a cell-phone photo taken by one of the undercover officers during the controlled purchase of narcotics from Dark had not been disclosed or preserved;  that his attorney was ineffective for failing to pursue an agency defense;[3] and that the sentence was unduly harsh.   The Fourth Department found that all of Dark's arguments lacked merit.

As mentioned earlier, the alleged *Brady* violation involved the failure to disclose or preserve a cell-phone photo that one of the subject undercover officers had taken as he and his partner were purchasing crack cocaine and marijuana from Dark.    More specifically, on the date of the undercover operation, February 4, 2010, the two officers approached Dark in a convenience store, during the daytime, asking to buy narcotics. Prior to that, the officers had received information that an individual using the name "Day Day" was selling narcotics from that location.[4]  Dark told one of the officers to return to the pair's car while he took the other officer behind the convenience store and sold him a

---

[3] *See, People v. Lam Lek Chong*, 45 N.Y.2d 64, 72, 379 N.E.2d 200, 205 (1978) (Discussing agency defense.).

[4] *See*, Resp't's Mem. of Law, ECF No. 5 at p. 5 ("Acting on information provided by the Buffalo Police, Bonafede and Slusser went to a convenience store at the intersection of Ernst and Ferry Street in the city of Buffalo (*Id.*) . They were told to look for a large black male, approximately 6'3" and 250 pounds, known as "Day
Day""").

quantity of crack cocaine.  The undercover officer who was with Dark then asked Dark to come to the car, telling him that the other undercover officer was interested in purchasing marijuana.  Evidently, as Dark was approaching the car, the undercover officer in the car surreptitiously took a picture of Dark with his cell phone camera. Neither the prosecution nor the defense became aware that the photograph had been taken until a third officer, to whom one of the undercover officers had shown the phone photo, testified at trial.  The officer who took the photo testified that he had used a police-issued cell phone with only basic features, having no memory card and no means of transferring the photograph to another device, and that he had turned the phone in to be destroyed, when he had been issued a new phone, prior to Dark's arrest some months after the undercover operation. In response to a defense motion to dismiss the indictment, County Court dismissed two counts of the indictment[5] charging Dark with Criminal Sale of Marijuana in the Fourth Degree (PL § 221.40), reasoning that such sanction was appropriate since the photograph had been taken during the marijuana-sale phase of the transaction (as opposed to the crack cocaine-sale phase) between Dark and the undercover officers.

The Fourth Department rejected Defendant's argument that County Court should have dismissed the entire indictment, stating:

> The record demonstrates, however, both that the People learned at the same time as defendant that the photograph had been taken, and that the photograph was no longer in existence by the time that defendant was arrested.  Thus, the prosecution was not required to impart identifying information unknown to them and not within their possession.  Moreover, inasmuch as the exculpatory potential of this evidence is purely speculative, its destruction by the police does not violate the *Brady* rule.

---

[5] See, Resp't's Mem. of Law, ECF No. 5 at p. 3 ("Under Indictment No. 00788-2010, defendant was charged with criminal sale of a controlled substance in the third degree (Penal Law § 220.39[1]), criminal possession of a controlled substance in the third degree (Penal Law § 220.16[l]), and two counts of criminal sale of marihuana in the fourth degree (Penal Law § 221.40).").

ECF No. 1 at p. 14 (citations omitted).

The Fourth Department similarly rejected Dark's claim that his attorney had been ineffective for failing to raise an agency defense, stating:

> We conclude with respect to the failure to assert an agency defense that defendant received meaningful representation because there is no denial of effective assistance based on the failure to make a motion or argument that has little or no chance of success. Defendant engaged in salesman-like behavior by touting the quality of the product, and he lacked a preexisting relationship with the buyers, who were undercover police officers. Thus, there was no basis for defense counsel to assert an agency defense on behalf of defendant.

ECF No. 1 at pp. 13–14 (citations omitted).

The Fourth Department also rejected Dark's assertion that his attorney had been ineffective by failing to request a *Wade* hearing. In that regard, on March 3, 2010, one month after Dark had sold narcotics to the two undercover officers, he was arrested on another matter. At that time, while Dark was handcuffed in the back of a police car, one of the two undercover officers who had purchased drugs from Dark on February 4, 2010 came to the scene and, using binoculars from fifty feet away, identified Dark. Dark maintains that this identification procedure was impermissibly suggestive.[6] The Fourth Department found that defense counsel had indeed requested a *Wade* hearing, but that

---

[6] *See, e.g., People v. Tavares*, 212 A.D.2d 646, 646–47, 622 N.Y.S.2d 579, 580 (1995) ("We also find that, prior to any retrial of the defendant, a hearing should be held regarding the circumstances of the undercover police officer's viewing of the defendant following his arrest, eight days after the officer had allegedly purchased cocaine from the defendant for the last time (*see, People v. Gordon*, 76 N.Y.2d 595, 600–601, 561 N.Y.S.2d 903, 563 N.E.2d 274). The defendant is entitled to a *Wade* hearing (*United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149) in order to determine whether the undercover police officer's viewing of him was merely confirmatory or an impermissibly suggestive identification procedure and, in the latter case, whether the officer nevertheless had an independent source for his in-court identification of the defendant (*see, People v. Adams*, 53 N.Y.2d 241, 251–252, 440 N.Y.S.2d 902, 423 N.E.2d 379).")

County Court had never ruled on the request.  Consequently, the Fourth Department reserved decision and remitted the matter to County Court for a ruling on the motion for a *Wade* hearing.

During a subsequent appearance on the matter in County Court, the court and counsel agreed that defense counsel had withdrawn the request for a Wade hearing:

> On remittal, the parties appeared before the trial Court on June 3, 2013 (APR 4; numbers in parentheses preceded by "APR" refer to pages of the Appearance Post-Remittal) . During that proceeding, the prosecutor stated that defense counsel had waived the hearing (APR 5) . The trial court also recollected that defense counsel had informed it, during a bench conference, that a hearing would not be necessary (APR 6) . Defense counsel also confirmed that he had agreed to withdraw the motion (*Id.*).

Resp't's Mem. of Law, ECF No. 5 at p. 13.  Defense counsel indicated that it was his recollection that he had withdrawn the request for a *Wade* hearing after discussing the matter with Defendant.  County Court subsequently concluded that Dark had withdrawn his request for a *Wade* hearing, which prompted Dark to argue, again before the Appellate Division, that his attorney was ineffective for withdrawing the request. However, the Appellate Division rejected that argument, stating:

> An attorney's failure to make a motion or argument that has little or no chance of success does not amount to ineffective assistance.  Here, two undercover officers were involved in the purchase of narcotics from defendant on February 4, 2010.  Defendant was not arrested at that time, but he was arrested for a different offense on March 3, 2010.  One of the two undercover officers involved in the February 4, 2010 transaction went to the scene of defendants March 3, 2010 arrest and, while at the scene, the officer used binoculars to identify defendant, who was handcuffed in the back of a police vehicle less than 50 feet away.  The People correctly concede that such identification was not merely confirmatory, but even assuming, arguendo, that defense counsel could have established suggestiveness of the identification of defendant by the subject undercover officer at trial, we agree with the People that defense counsel could have concluded that there was an independent source for the identification of

photo to exculpate Dark or impeach the officers is speculative.  Respondent states that the ineffective assistance claims, involving counsel's failure to pursue an agency defense and to pursue a *Wade* hearing, lack merit since counsel had no duty to pursue meritless defenses or applications.   In that regard, Respondent contends that the evidence clearly indicates that Dark was not acting as the agent of the undercover police officer buyers, and that a *Wade* hearing would not have resulted in a ruling favorable to Dark since, even assuming that the undercover officer's identification of Dark on  March 3, 2010 was suggestive, the officer had an independent source for his in-court identification of Dark, namely, his observation of Dark, at close range in broad daylight, over a period of approximately ten minutes, during the drug purchase on February  4, 2010.  Respondent further argues that insofar as Dark contends that his attorney was ineffective for withdrawing the request for a Wade hearing, the contention lacks merit since that was a strategic decision committed to counsel's discretion, for which he did not need Dark's consent.

On September 30, 2016, Dark filed a reply.  (ECF No. 6).  Regarding the *Brady* claim, the reply states, in pertinent part:

> Petitioner argues that the cell phone photograph was material and that there was a reasonable possibility that its disclosure would have caused a different result at the trial.
>
> ***
>
> This error herein was not harmless, as the identification of Petitioner as the actual suspect was the central issue, and the credibility of the identification made by Officers Bonafede and Slusser was [a] pivotal consideration.

ECF No. 6 at p. 9.   As for the ineffective assistance claim based on defense counsel's decision to withdraw the request for a *Wade* hearing, the reply denies that Dark agreed with counsel to withdraw the request, and contends that, by withdrawing the request,

counsel took a position that was adverse and prejudicial to Dark.  Indeed, Dark alleges that his attorney "became a witness against him" when he indicated that he had withdrawn the request for a *Wade* hearing, and therefore was ineffective.

Pursuant to Rule 8 of Rules Governing Habeas Corpus cases under Section 2254 in the United States District Courts and upon review of the answer, transcript and record, the Court determines that an evidentiary hearing is not required. After considering the parties' submissions and the entire record, the petition is denied for the reasons set forth below.

## DISCUSSION

### Petitioner's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

### Section 2254 Principles

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general legal principles applicable to such a claim are well settled:

> [A] federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

> A state court decision is contrary to clearly established Federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronts facts that are

materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's result.

A state court decision involves an unreasonable application of clearly established Federal law when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case.  To meet that standard, the state court's decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  It is well established in this circuit that the objectively unreasonable standard of § 2254(d)(1) means that a petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Santana v. Capra*, No. 15-CV-1818 (JGK), 2018 WL 369773, at *7–8 (S.D.N.Y. Jan. 11, 2018) (Koeltl, J.) (citations and internal quotation marks omitted).  Here, the state courts adjudicated Dark's claims on the merits.

The Alleged *Brady* Violation

Petitioner claims to be entitled to habeas relief under *Brady*, and the legal principles concerning such claims are clear:

The due process principles applicable here are well and clearly established. "The prosecution [has an] affirmative duty to disclose evidence favorable to a defendant . . . ." *Kyles*[ *v. Whitley*], 514 U.S. [419,] 432, 115 S.Ct. 1555 [(1995)]. That duty

can trace its origins to early 20th-century strictures against misrepresentation and is of course most prominently associated with th[e Supreme] Court's decision in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See id.*, at 86, 83 S.Ct. 1194 (relying on *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935), and *Pyle v. Kansas*, 317 U.S. 213, 215–216, 63 S.Ct. 177, 87 L.Ed. 214 (1942)).

*Kyles*, 514 U.S. at 432, 115 S.Ct. 1555. The contours of the duty have progressively been refined. In *Brady*, the Supreme Court held "that the

suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. In *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court held that the duty to disclose such evidence is applicable irrespective of whether the accused made a request. In *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court held that the duty to disclose exists irrespective of whether the information bears on the defendant's innocence or a witness's impeachment. And if the withheld evidence contains material for impeachment, it falls within the *Brady* principles even if it may also be inculpatory: "Our cases make clear that Brady's disclosure requirements extend to materials that, whatever their other characteristics, may be used to impeach a witness." *Strickler v. Greene*, 527 U.S. 263, 282 n. 21, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *see, e.g., Bagley*, 473 U.S. at 676, 105 S.Ct. 3375.

However, the withholding of such evidence does not violate the accused's due process right unless the evidence is "material," in the sense that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. at 682, 105 S.Ct. 3375. In *Banks v. Dretke*, 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004), the Supreme Court stated,

> [o]ur touchstone on materiality is *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). *Kyles* instructed that the materiality standard for *Brady* claims is met when "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." 514 U.S. at 435, 115 S.Ct. 1555.

*Banks*, 540 U.S. at 698, 124 S.Ct. 1256 (emphases ours). Thus, the *Brady* materiality

> question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression

> "undermines confidence in the outcome of the trial." *Bagley*,
> 473 U.S. at 678, 105 S.Ct. 3375.

> *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555 (emphases ours). The "defendant
> need not demonstrate that after discounting the inculpatory evidence in light
> of the undisclosed evidence, there would not have been enough left to
> convict." *Id.* at 434–435, 115 S.Ct. 1555. He need only show, considering
> the record as a whole, a "reasonable probability"—and "the adjective is
> important," *id.* at 434, 115 S.Ct. 1555 (internal quotation marks omitted)
> (emphasis ours)—of a different result great enough to "undermine[ ]
> confidence" that the jury would have found him guilty beyond a reasonable
> doubt, *id.* (internal quotation marks omitted).

*Fuentes v. T. Griffin*, 829 F.3d 233, 246 (2d Cir. 2016).

However, the Court does not agree with Petitioner that this case presents a

*Brady* claim.  Rather, where, as here, a claim "really involves the loss or destruction

of evidence," that is, a *failure to preserve evidence* that can no longer be produced,

it

> "poses problems slightly different from *Brady*." *United States v. Bakhtiar*,
> 994 F.2d 970, 975 (2d Cir.), *cert. denied*, 510 U.S. 994, 114 S. Ct. 554
> (1993). As such, "a due process claim arising in these circumstances should
> be treated as a claim for loss or destruction of evidence rather than as a
> *Brady* claim." *United States v. Tyree*, 279 Fed.Appx. 31, 33 (2d Cir.), *cert.
> denied*, 555 U.S. 963, 129 S. Ct. 443 (2008). "Destruction of evidence by
> the government only rises to a constitutional violation when three
> requirements are met: (1) the government must have acted in bad faith in
> destroying the evidence; (2) the 'evidence must . . . possess an exculpatory
> value that was apparent before [it] was destroyed'; and (3) the defendant
> must be 'unable to obtain comparable evidence by other reasonably
> available means.'" *United States v. Tyree*, 279 Fed.Appx. at 33 (quoting
> *California v. Trombetta*, 467 U.S. 479, 489, 104 S. Ct. 2528, 2534 (1984));
> *accord, e.g., United States v. Hunley*, 476 Fed.Appx. 897, 898-99 (2d Cir.
> 2012); *Clark v. Capra*, 14 Civ. 2507, 2017 WL 4685298 at *10 (S.D.N.Y.
> June 22, 2017), R. & R. adopted, 2017 WL 4685104 (S.D.N.Y. Oct. 17,
> 2017).

*DeJesus v. Superintendent of Attica Corr. Facility*, No. 17CIV3932GBDAJP, 2017 WL 6398338, at *33 (S.D.N.Y. Dec. 13, 2017) (footnotes omitted, collecting cases), report and recommendation adopted sub nom. *Dejesus v. Superintendent of the Attica Corr. Facility*, No. 17CIV3932GBDAJP, 2018 WL 4043144 (S.D.N.Y. Aug. 7, 2018); *see also, Clark v. Capra*, No. 14 CV 2507 (VB), 2017 WL 4685104, at *3 (S.D.N.Y. Oct. 17, 2017) ("Regarding the failure to preserve evidence claim, petitioner objects to Judge Smith's finding that the accidental deletion of crime scene photographs did not deprive him of due process. Petitioner cites *Brady v. Maryland*, 373 U.S. 83 (1963), as support for this claim. However, unlike in *Brady*, the alleged defect "cannot be cured by ordering a new trial including the missing evidence." *United States v. Bakhtiar*, 994 F.2d 970, 975 (2d Cir. 1993). Thus, Judge Smith's analysis was proper because "a due process claim arising in these circumstances should be treated as a claim for loss or destruction of evidence rather than as a *Brady* claim.") (citation omitted); *United States v. Tyree*, 279 F. App'x 31, 33 (2d Cir. 2008) ("As we explained in *United States v. Bakhtiar*, 994 F.2d 970 (2d Cir.1993), a case which also involved a government loss of tapes, a due process claim arising in these circumstances should be treated as a claim for loss or destruction of evidence rather than as a *Brady* claim.").

As mentioned earlier, to establish this type of due process violation a defendant/petitioner must show three things: (1) that the government acted in bad faith in destroying the evidence;[7] (2) that the evidence possessed an exculpatory value that was apparent before it was destroyed; and 3) that the

---

[7]*See, Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 337, 102 L. Ed. 2d 281 (1988) ("We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.").

defendant/petitioner is unable to obtain comparable evidence by other reasonably available means.   Of these, Petitioner can only establish the third element.  He has not shown that the police acted in bad faith, nor has he shown that the photograph had apparent exculpatory value.[8]   Consequently, Petitioner's failure to preserve evidence claim lacks merit.

<u>Ineffective Assistance of Counsel</u>

Plaintiff's remaining claims relate to his contention that his trial attorney was ineffective for failing to pursue both a *Wade* hearing and an agency defense.[9]  The familiar test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), for evaluating an ineffective assistance of counsel claim has two prongs. The first requires showing that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688, 694. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). Fulfilling the second prong of an ineffective assistance claim requires a showing of prejudice which translates to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S.

---

[8] Regarding the potential exculpatory value of the photograph, the only evidence of record on this point is the sworn testimony of Officer Slusser, one of the two undercover officers who purchased drugs from Dark on February 4,  2010,  that the photo showed Dark from the waist up.

[9] Petitioner also argues that County Court erred by failing to conduct a *Wade* hearing after the matter was sent back by the Fourth Department for that purpose.  However, that argument lacks merit since, upon remand, the court and counsel agreed that the request for a *Wade* hearing had been withdrawn, unbeknownst to the Fourth Department.  The Fourth Department found no error in that regard when it subsequently considered the matter.

at 694. "The habeas petitioner bears the burden of establishing both deficient performance and prejudice." *Greiner*, 417 F.3d at 319 (citing *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004)).

A defense attorney cannot be deemed ineffective for failing to pursue an unmeritorious defense or application. *See, United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance, *see United States v. Javino*, 960 F.2d 1137, 1145 (2d Cir.), cert. denied, 506 U.S. 979, 113 S.Ct. 477, 121 L.Ed.2d 383 (1992), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066; *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir.1992), cert. denied, 507 U.S. 998, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993); *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir.1990).").

Here, the failure by defense counsel to pursue an agency defense at trial cannot be deemed ineffective assistance, since there is no indication that such a defense would have succeeded.  Rather, for the reasons identified by the Fourth Department, the Court agrees that such a defense would have had "little or no chance of success."  Petitioner's bald assertion that counsel should have pursued such a defense lacks merit.

The same goes for Petitioner's contention that his trial attorney was ineffective for failing to pursue a *Wade* hearing.  In that regard, Petitioner contends that his attorney should have attempted to suppress the undercover officer's identification of him, on March 3, 2010, using binoculars while Petitioner was in the back of a patrol car, as impermissibly suggestive.  However, Petitioner fails to

counter the fact that even if that identification was found to have been unduly suggestive at a *Wade* hearing, the officer still had an independent source for identifying him in court at trial, namely, the ten minutes that he spent with Petitioner, at close range in broad daylight, during the drug purchase on February 4, 2010. *See, Davis v. Herbert*, 170 F. App'x 763, 765 (2d Cir. 2006) ("[A]n in-court identification may be admissible, despite prior illegality relating to a line-up, so long as there is an independent source for the identification. *United States v. Wade*, 388 U.S. 218, 241–42, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)."); *see also, Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006) ("As a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there was no tactical justification for the course taken.") (citation and internal quotation marks omitted), as amended (May 19, 2006). Consequently, Petitioner cannot establish either that his attorney was ineffective for withdrawing the request for a *Wade* hearing or that he suffered prejudice as a result.

To the extent Petitioner contends that counsel was nevertheless ineffective, or that he had a conflict of interest, when he made the decision to withdraw the request for a *Wade* hearing without Petitioner's consent, the claim still lacks merit. *See, e.g., Taylor v. Rivera*, No. 07 CIV. 8668 PKC DF, 2011 WL 4471919, at *23 (S.D.N.Y. Apr. 18, 2011) ("Petitioner claims that his counsel 'created a conflict of interest' by stipulating as to the accuracy of the written transcription of Clark's plea allocution without Petitioner's consent.  Petitioner cannot establish that his trial counsel was objectively unreasonable to enter into this stipulation . . . .  Moreover, entering into a stipulation is a strategic decision that defense counsel may make

on the defendant's behalf."), report and recommendation adopted, No. 07 CIV. 8668 PKC DF, 2011 WL 4472146 (S.D.N.Y. Sept. 27, 2011), *aff'd*, 509 F. App'x 51 (2d Cir. 2013); *see also, Key v. Artuz*, No. 99-CV-161JG, 2002 WL 31102627, at *7 (E.D.N.Y. Sept. 16, 2002) ("Key alleges that he was not consulted on the decision to withdraw his motion to suppress the videotaped statement, in violation of his due process rights. This was adjudicated on the merits and denied in state court on Key's § 440.10 motion. This decision was not contrary to or an unreasonable application of clearly established Federal law. Though significant, defense counsel's decision was not one of the fundamental decisions—such as whether to plead guilty, testify at trial, or file an appeal—about which the failure to consult one's client would amount to a constitutional violation. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Rather, the decision involved in this matter was a tactical one, "such as selective introduction of evidence, stipulations, objections and pre-trial motions," which the Second Circuit has held can be made by defense counsel alone. *United States v. Plitman*, 194 F.3d 59, 63 (2d Cir.1999)."). Moreover, Plaintiff cannot demonstrate prejudice for the reasons already discussed.

## CONCLUSION

The application under 28 U.S.C. § 2254 is denied. The Clerk of the Court is directed to close this case. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*,

369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated:	Rochester, New York
	October  27, 2020

ENTER:

CHARLES J. SIRAGUSA
United States District Judge